IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KATIE GONZALES,

    Plaintiff,

3:16-CV-00432-PK

OPINION AND
ORDER

v.


NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

---

PAPAK, Magistrate Judge:

    Plaintiff Katie Gonzales ("Gonzales") filed this action June 25, 2009, seeking judicial review of the Commissioner of Social Security's final decision denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II

and XVI of the Social Security Act (the "Act"). This court has jurisdiction over Gonzales' action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). I have considered all of the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision should be REVERSED and REMANDED for the immediate payment of benefits.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge ("ALJ") considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An

impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b)[1]; *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-154. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id., quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§

---

[1]Effective March 27, 2017, updates were made to the regulations. The C.F.R. sections referenced here have been renumbered and the citations listed here are the versions of the C.F.R. that were in effect at the time Gonzales requested judicial review.

Page 3 - OPINION AND ORDER

404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[2] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national

---

[2] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

Page 4 - OPINION AND ORDER

economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id., quoting Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent

findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## SUMMARY OF ADMINISTRATIVE RECORD[3]

Gonzales was born on February 18, 1982. Tr. 41, 169, 176.[4] On June 25, 2009, Gonzales filed applications for DIB and SSI benefits based on bipolar disorder, depression, migraines, and asthma. Tr. 169-79, 199. Both applications alleged a disability onset date of October 30, 2008. Tr. 169, 176. Both claims were denied initially on November 19, 2009, and upon reconsideration on April 13, 2010. Tr. 91, 96. Gonzales is a high school graduate, and has completed some college credits. Tr. 45-46, 206. She worked as a waitress, cab dispatcher, telemarketer, and customer service representative. Tr. 50-53, 77-78, 200.

On May 26, 2011, Gonzales appeared and testified before ALJ Rudy Murgo, and on August 17, 2011, the ALJ issued a decision finding Gonzales was not disabled at any time from October 30, 2008 through the date of the decision. Tr. 30. Gonzales appealed her decision to the United States District Court, which reversed the ALJ's decision on July 18, 2014, and remanded the case for further administrative proceedings. Tr. 1496-1512. In the interim, Gonzales filed a

---

[3] The following recitation constitutes a summary of the evidence contained within the Administrative Record, and does not reflect any independent finding of fact by the court.

[4] Citations to "Tr." refer to the page(s) indicated in the official transcript of the Administrative Record filed herein as docket no. 15, 16, 17, and 18.

subsequent claim for SSI on June 5, 2013, and the State Agency determined she was disabled as of that date. Tr. 1489.

On December 17, 2015, a second ALJ hearing was held before ALJ Murgo. Tr. 1369-88. On January 6, 2016, the ALJ issued his decision finding Gonzales has not been disabled from October 30, 2008 through the date of the decision. Tr. 1404. Gonzales timely appealed the ALJ's decision.

I.  **The Medical and Administrative Record**

The medical and administrative record is extensive and the parties are familiar with it. Accordingly, it will be set out below only as relevant.

II. **The Hearing Testimony - May 26, 2011**

On May 26, 2011, Gonzales appeared for a hearing conducted before an ALJ in connection with her DIB and SSI applications. Tr. 37-86. Gonzales, her father, her counsel, and a VE were present and testified. *Id.* Gonzales testified that she cared for her two children, an eleven year old son, and a six year old daughter and had completed high school and some college, but did not have a college degree. Tr. 43, 45. She described her past employment as a taxi cab dispatcher, waitress, telemarketer, and customer service representative. Tr. 50-53. She explained she could not maintain employment because she cannot stay focused and is pain, noting that she gets "out of whack" because of her medical conditions, which she described as pseudotumor cerebri, significant headaches, and vision problems. Tr. 53, 55, 60. Gonzales described her daily activities include caring for her children, doing laundry, and cooking, but that she relies on her parents for reminders to complete tasks and to help if her headaches become debilitating. Tr. 65-69, 71.

Mr. Daniel Raymond Gonzales ("Mr. Gonzales") testified on behalf of his daughter. Tr. 73-75. He explained that she does not "get it" when supervisors try to explain rules and policies to her. Tr. 75.

Next, the ALJ questioned VE Hanoch Livneh. Tr. 78. The ALJ asked the VE to consider an individual of the claimant's

> age, education, and work experience who has the following RFC: no limits on lifting, walking, standing, sitting; no postural limits, no manipulative limitations, no visual limits but must avoid concentrated exposure to noise, concentrated exposure to fumes, [odors], due, gases, and poor ventilation, and must expose [sic] concentrated exposure to hazards and heights. Could such a hypothetical perform any of the claimant's past work? Tr. 78.

Based on this RFC, the VE testified that a hypothetical person could perform all of claimant's past relevant work. *Id.*

Next, the ALJ asked the VE to consider an individual with the added limitations that they

> can remember and carry out simple one or two step instructions, but would have difficulty or may have difficulty remembering and carrying out complex three plus step instructions; may have difficulty concentrating for extended periods of time; but with normal work breaks is able to sustain a normal work day, work week; occaional public contact and occasional co-worker contact. Tr. 79.

For this hypothetical, the VE testified that a person with this RFC could not perform any of Gonzales' part relevant work, but other jobs existed in the national economy that could be performed, which included photocopying machine operator, assembler of small products, and produce sorter. Tr. 79-80.

Next, the ALJ asked the VE to consider an individual with the same RFC, but who has no vision in the right eye. Tr. 81. The VE testified that this would reduce the number of jobs

Page 8 - OPINION AND ORDER

available, but that there are "really no restrictions in the DOT." Tr. 81. Then, the ALJ asked if a person who is absent two or more days a month was employable in the national economy, to which the VE testified that they could not maintain employment. Tr. 82. Finally, the ALJ asked the VE whether an individual who was unavailable to work or off task "10 percent or more of the time in a work day, work week, work month, over time" was employable. Tr. 82. The VE testified that he did not think an employer would tolerate that. Tr. 82. Based on this testimony, the ALJ concluded that Gonzales was capable of performing work in the national economy, and was therefore not disabled. Tr. 30.

### III. The Hearing Testimony - December 17, 2015

On December 17, 2015, a second hearing was conducted before ALJ Murgo in connection with Gonzales' DIB and SSI application. Tr. 1369-1388. Gonzales, her counsel, a VE, and a medical expert ("ME") were present and testified. Tr. 1369. Dr. Quincy Gordy ("Dr. Gordy"), the medical expert testified that Gonzales had "diagnostic categories" that would fall under attention deficit disorder, major depressive disorder, bipolar disorder, depressive disorder not otherwise specified, and personality disorder not otherwise specified, but it was her opinion that none of these "independently or in combination equal or meet a listing." Tr. 1373. Dr. Gordy also testified that with respect to the paragraph B criteria, Gonzales would have mild limitations in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration and pace, and no episodes of decompensation. Tr. 1374. Dr. Gordy opined Gonzales could perform simple, routine tasks, but would need "limited contact with coworkers and the general public." *Id.* Finally, Dr. Gordy commented that she would recommend Gonzales be evaluated and receive psychiatric treatment. Tr. 1377-78.

Page 9 - OPINION AND ORDER

Next, Gonzales testified that she was living with her three children, after giving birth to a third child, and had no additional schooling since the previous ALJ hearing on May 26, 2011. Tr. 1380. She also testified that she was taking the medications Tramadol, Percocet, Seroquel, Trazadone, ibuprofen, and ventilin. Tr. 1380-81. Gonzales testified that she is not in any counseling, has no upcoming surgeries, and has no illegal drug use. Tr. 1381-82. Gonzales further testified that she continued to have headaches a couple times a week that vary in duration from a couple hours to a couple days or weeks. Tr. 1382. She explained that in the past she had a shunt placed, but it was eventually replaced, and then removed in 2010 after the tubing failed. Tr. 1383.

Finally, the ALJ asked VE Gary Jesky to consider an individual who "doesn't have lifting, walking, standing limitations but must avoid concentrated exposure to noise ... fumes, dust, gases, pulmonary irritants, poor ventilation, smoke, dust, odors. Must avoid concentrated exposure to heights, hazards, and heavy equipment," can "perform simple routine tasks, SVP-1 or 2 type tasks," and "[i]s limited to occasional public and coworker contact." Tr. 1385. The ALJ asked whether "such a hypothetical person [could] perform any of the claimant's past [work]?," to which the VE replied "no." Id. Next, the ALJ asked whether there were any "medium work such a hypothetical person could perform in the national economy?" Id. The VE testified that the hypothetical person could perform the jobs of laundry worker and cleaning jobs. Tr. 1386. Next, the ALJ posed a third hypothetical where he asked the VE to consider an individual with a "light level" restriction, but all other limitations the same. Id. At the light level, the VE testified that a person with those limitations could perform small products assembly jobs, and packaging and sorting jobs. Id. Finally, the ALJ asked whether a person who is "absent two or more days a

Page 10 - OPINION AND ORDER

month," or is "off-task 20 percent or more in a workday, work week, [or] work month" is employable in the national economy, to which the VE answered no. *Id.* Based on the VE's testimony, the ALJ found Gonzales could perform other work in the national economy and was therefore not disabled. Tr. 1404-05.

## SUMMARY OF ALJ FINDINGS[4]

At the first step of the five-step sequential evaluation process, the ALJ found Gonzales did not engage in substantial gainful activity since October 30, 2008, the alleged onset date. Tr. 1394.

At the second step, the ALJ found that Gonzales' impairments of pseudotumor cerebri, migraines, anemia, an affective mood disorder, a personality disorder, depression, obesity, and an organic mental disorder were "severe" for purposes of the Act. Tr. 1394-96. Because an impairment was deemed severe, the ALJ proceeded to the third step of the analysis.

At the third step, the ALJ found that none of Gonzales' impairments were the equivalent of any of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1. Tr. 1396-98. The ALJ therefore conducted an assessment of Gonzales' residual functional capacity. Specifically, the ALJ found that Gonzales has the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant must avoid concentrated exposure to noise, fumes, dust, gases, poor ventilation and other pulmonary irritants as well as hazards, heights and heavy equipment. The claimant is limited to simple, routine SVP 1-2 step tasks. The claimant can have no more than occasional contact with the general public and coworkers. Tr. 1398-1403.

At the fourth step of the five-step process, the ALJ found Gonzales was unable to perform any

---

[4] The Summary of ALJ Findings describes the ALJ's findings issued on January 6, 2016 after the second ALJ hearing held on December 17, 2015.

Page 11 - OPINION AND ORDER

past relevant work as a customer service representative, dispatcher, telemarketer, and waitress. Tr. 1403. The ALJ relied on the testimony of a VE that an individual with the RFC set out above could perform other work, including laundry worker, cleaner, small product assembly, and packaging and sorting. Tr. 1403-04. On that basis, the ALJ concluded that Gonzales was not disabled as defined in the Act at any time from October 30, 2008, through January 6, 2016, the date of his decision. Tr. 1404.

## ANALYSIS

Gonzales argues the ALJ erred by (1) reopening her award for benefits for less than good cause; (2) improperly rejecting the medical opinions of Dr. Keli Dean ("Dr. Dean"), and Dr. James Bryan ("Dr. Bryan"); (3) improperly rejecting the medical opinion of treating nurse practitioner, Vera Vos ("FNP Vos"); and (4) improperly rejecting her subjective symptom testimony. Pl.'s Opening Br. 7-20.

The Commissioner concedes that reversal of the ALJ's decision is warranted. Def.'s Br. 6-7. Specifically, the Commissioner acknowledges that the ALJ erred by improperly reopening the subsequent June 5, 2013, favorable determination that Gonzales was disabled without providing any explanation. *Id.* Thus, the sole issue on review is whether this case should be remanded for further proceedings or for the payment of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985.) The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the

Page 12 - OPINION AND ORDER

Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (citing *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett*, 340 F.3d at 876 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, Gonzales contends that remand for the immediate payment of benefits is proper because her statements and the medical opinions should be fully credited and support a disability determination. Pl.'s Reply Br. 1-7. Conversely, the Commissioner asserts that remand for further proceedings is required because the ALJ reasonably assessed the statements of Gonzales, Dr. Dean, Dr. Bryan, and FNP Vos, such that the only unresolved issue is the ALJ's improper reopening of Gonzales' award for benefits. Def.'s Br. 6-7.

Of the remaining four issues, I find only two determinative of disability: the rejection of Gonzales' subjective symptom testimony and the medical opinion of FNP Vos. Namely, I need

Page 13 - OPINION AND ORDER

not address whether the ALJ improperly rejected the medical opinions of consultative examiner, Dr. Keli Dean, or Dr. James Bryan because, even if credited as true, it is not clear based on this evidence that the ALJ would be required to find Gonzales disabled.

First, Dr. Dean wrote that Gonzales' overall intellectual score was within the "Average range" and that her symptoms were "prominent enough to support a diagnosis of ADHD, Combined Type." Tr. 355-56. Dr. Dean recommended Gonzales be referred to an individual counselor to help her manager her depression and ADHD. Tr. 356. At the end of her assessment, Dr. Dean included a list of Employment Recommendations and Employment Accommodations, which I find suggest Gonzales has the ability to work despite her limitations. Tr. 358.

Additionally, it is not clear based on the medical opinion of Dr. Bryan that Gonzales is disabled. Although Dr. Bryan opined that Gonzales would have marked difficulties responding appropriately to usual work situations and changes in routine work settings, he also found Gonzales' "neuropsychological profile cannot be accurately interpreted." Tr. 1352, 1362. Dr. Bryan found "[w]idely variable levels of performance between related cognitive tests" and "[i]nconsistency between similar trials." Tr. 1362. Overall, Dr. Bryan diagnosed Gonzales with a pain disorder associated with psychological factors and a general medical condition, and malingering. Tr. 1364. Based on the inconsistent test results found by Dr. Bryan, it is not clear whether Gonzales would be found disabled if Dr. Bryan's medical opinions were fully credited.

Accordingly, I turn to the two issues that are determinative of disability: Gonzales' subjective symptom testimony and the medical opinion evidence of FNP Vos.

A.    **Gonzales' Subjective Symptom Testimony**

First, the ALJ erred by failing to provide a clear and convincing reason for rejecting Gonzales' subjective symptom testimony.

If "there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only be offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Smolen*, 80 F.3d at 1281, 1283-84). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Here, the ALJ did not affirmatively accept Dr. Bryan's diagnosis of malingering, so he was required to provide a clear and convincing reason for discrediting Gonzales' subjective symptom testimony. In discrediting Gonzales' subjective symptom testimony the ALJ found the "course of medical treatment and the use of medication in this case are not consistent with the claimant's alleged conditions." Tr. 1399. Specifically, the ALJ found Gonzales did not follow recommendations that she seek mental health treatment and psychological counseling. *Id.* However, this is not a clear and convincing reason to discredit Gonzales' subjective symptom testimony because her failure to seek treatment was related to minimizing her mental health impairments. Tr. 1363. *See Garrison v. Colvin*, 759 F.3d 995, 1018, n. 24 (9th Cir. 2014) (citing *Nguyen v. Colvin*, 100 F.3d 1462, 1465 (9th Cir. 1996) (It was error for the ALJ to discredit claimant's subjective symptom testimony when her departure from prescribed treatment was

related to her underlying mental impairments.)

Next, the ALJ discredited Gonzales' subjective symptom testimony because her alleged limitations are not supported by the record. Tr. 1399. The ALJ noted that her intellectual abilities fell within the average range, and that her pain symptoms decreased with medication, noting her use of Topamax, caffeine, Benadryl, and Botox injections to relieve headache pain. *Id.* Although her intellectual abilities fell within the average range, there is evidence in the record that suggests she would not be able to maintain employment despite her average intellect, specifically, with respect to her ability to maintain focus and complications with her headaches. *See* Tr. 53, 73-75, 214-25, 226, 315, 334-37, 970, 1021. Additionally, although the ALJ correctly notes that Gonzales' headache pain was controlled effectively with medication, an independent review of the entire record shows these improvements eventually stopped. Indeed, despite initial improvement, Gonzales continued to suffer from debilitating headaches and complained to doctors that Botox treatments were no longer effective. *See* Tr. 2033, 2064, 2071, 2083, 2093, 2108, 3052, 3137. Therefore, I find these are not clear and convincing reason to discredit Gonzales' subjective symptom testimony.

Next, the ALJ discredited Gonzales' subjective symptom testimony because her functional limitations are not as significant or limiting as alleged, noting that Gonzales lives on a second floor apartment, goes grocery shopping, travels, gave birth to a child, drives, and watches television. Tr. 1399-1400. Although Gonzales did occasionally perform these activities they are not inconsistent with her allegations that she could not spend a substantial part of her day performing work activities. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (the mere fact that a claimant can carry out certain minimal activities such as reading or watching television

Page 16 - OPINION AND ORDER

does not detract from credibility as to overall disability.) Although Gonzales testified to being able to complete these activities she explained that she needs constant reminders from her parents to complete them, and receives help from them whenever she suffers from a disabling headache. *See* Tr. 68, 70-71, 211, 226-28. Based on the entire record, the court finds the ALJ's reliance on Gonzales' ability to perform certain activities of daily living is not a clear and convincing reason for discrediting Gonzales' subjective symptom testimony.

Next, the ALJ discredited Gonzales' subjective symptom testimony based on her past work history, noting that her work history "shows she has not put forth a good faith effort to support herself" and that "she lost her previous jobs for reasons not related to her conditions." Tr. 1400. I disagree. Gonzales attempted to work at multiple positions, but was fired because she did not follow directions, arrived late, and broke company rules. Tr. 1400. However, none of these reasons for losing her job are inconsistent with her impairments, which she described as an inability to focus. Tr. 51-53. If anything, the fact that Gonzales continued to lose positions for her inability to follow directions or company rules further supports her claim for disability and the presence of mental impairments that affect her ability to work. I find this was not a clear and convincing reason to discredit Gonzales' subjective symptom testimony.

Finally, the ALJ discredited Gonzales' subjective symptom testimony because there were inconsistencies in the medical record that the ALJ found reflected "unfavorably on the claimant's credibility." Tr. 1400. Specifically, the ALJ noted the medical opinions of Dr. Dean who found Gonzales exaggerated her symptoms on her MMPI test, the medical opinion of Dr. Ryan Brevard, who wrote that Gonzales's allegations regarding her headaches was not entirely credible, and the opinion of Dr. Bryan, who noted Gonzales' test results varied widely. *Id.*

Page 17 - OPINION AND ORDER

Although these medical records were inconsistent, the majority of the medical evidence suggests that Gonzales had suffered from debilitating headaches for years, and was limited by her mental health impairments, given her inability to maintain employment, as discussed above. *See* Tr. 51- 53, 272-319, 363-84, 970, 1021, 1066, 2033, 2120, 2142, 2848, 3023, 3386, 3392. The court finds the ALJ failed to provide a clear and convincing reason to reject Gonzales' subjective symptom testimony.

**B.     Rejection of Opinion of Other Medical Source; FNP Vera Vos**

Finally, with respect to the medical opinion of FNP Vos, the ALJ erred in giving it little weight.

Evidence from "other sources," including "nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, therapists," "[e]ducational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare workers)," "[p]ublic and private social welfare agency personnel," and other non-medical sources, such as spouses, parents, caregivers, relatives, friends, neighbors, and clergy, may be used to show the severity of a claimant's impairments and how they affect her ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d).[5] In order to reject evidence from "other sources," the ALJ must give germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Here, the ALJ noted that FNP Vos completed a check-box questionnaire in May 2011 concerning Gonzales's impairments. Tr. 1402. The ALJ gave FNP Vos' medical opinion little weight because she was not a medical source under the regulations and because the ALJ found

---

[5] See Footnote 1.

FNP Vos' opinions were based on Gonzales' subjective complaints and not on objective medical testing. Tr. 1402. First, although FNP Vos is not a "medical source under the regulations" this is not a legally sufficient reason to reject her medical opinion. Second, the court disagrees with the ALJ's finding that FNP Vos' opinions were based Gonzales' subjective complaints and not objective medical images or testing. An independent review of the record shows FNP Vos treated Gonzales over the years and wrote many of the medical reports after examining Gonzales. *See* Tr. 875-76, 1057-72. This court finds FNP Vos' medical opinions were based on objective medical images or testing, and therefore rejects the ALJ's finding that FNP Vos' medical opinion was based entirely on Gonzales' subjective complaints. Given the ALJ provided no other reason for rejecting FNP Vos' medical opinion, the ALJ erred in failing to provide a legally sufficient reason for rejecting FNP Vos' medical opinion.

## C. REMAND

The ALJ's failure to credit Gonzales' subjective symptom testimony and FNP Vos' medical opinion is erroneous for the reasons set out above. The VE testified that if an individual missed two or more days of work a month she would be unable to maintain employment. Tr. 1386. On this record, FNP Vos wrote that she expected Gonzales to miss two or more days of work per month based on her long treatment of Gonzales for complications with her headaches. Tr. 1349. If credited, that opinion establishes that Gonzales is disabled. Additionally, Gonzales testified that she can't focus or stay on task, which the VE testified would prevent an individual from being gainfully employed. Tr. 53, 70. Gonzales also testified that she has debilitating headaches about four times a month. Tr. 71. When crediting Gonzales and FNP Vos' testimony and medical opinion as true, this court concludes Gonzales is disabled based on this medical

record and no useful purpose would be served by a remand of this matter for further proceedings. *See Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000).

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying Gonzales' application for disability insurance benefits and supplemental security income is reversed and remanded for the immediate payment of benefits.

IT IS SO ORDERED.

Dated this 5th day of June, 2017.

Honorable Paul Papak
United States Magistrate Judge